IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHAFIIQ (Last Name Unknown), *et al.*, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-CV-1506 (RMC) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) ) ) ) ) | |
| Respondents. | ) | |

―――――――――――――――――――――――――――――――――――――――――――――――

**PETITIONER'S MEMORANDUM SHOWING CAUSE WHY PETITION FOR WRIT OF HABEAS CORPUS SHOULD NOT BE DISMISSED FOR LACK OF "NEXT FRIEND" STANDING**

―――――――――――――――――――――――――――――――――――――――――――――――

Petitioner Shafiiq (Last Name Unknown) ("Shafiiq" or "Petitioner") seeks a writ of *habeas corpus*. A citizen of Algeria, he acts on his own behalf and through his Next Friend, Jamaal Kiyemba, his co-detainee and friend. Shafiiq is being held without basis, without charge, without access to counsel, and without being afforded any fair process by which he might challenge his detention. He is being held by color and authority of the Executive Branch, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Accordingly, this Court should issue a writ of *habeas corpus* compelling Respondents either to release Petitioner Shafiiq or to establish before this Court a lawful basis for Petitioner Shafiiq's detention, and/or provide related injunctive and declaratory relief.

On June 28, 2004, the Supreme Court held in *Rasul v. Bush*, 542 U.S. 466, 480 that those in custody at Guantanamo are entitled to *habeas corpus* review by U.S. District Courts. Standing exists for this Court to review Shafiiq's Petition because:

- The Petitioners have alleged sufficient facts to make a prima facie case that there is standing;

- The Respondents' conduct and the circumstances of Shafiiq's detention severely impede his access to his family, his attorneys and this Court and create the need for next friend petitions;

- Shafiiq's Petition satisfies the *Whitmore* standards; and

- The Respondents' conduct and the circumstances of Shafiiq's detention provide cause for the Court to excuse any alleged defects in his allegations of standing and to order Respondents to cooperate in affording counsel an opportunity to consult with Shafiiq and his next friend, Kiyemba.

## ARGUMENT

### I. PETITIONERS HAVE ALLEGED SUFFICIENT FACTS TO MAKE A PRIMA FACIE CASE THAT THERE IS STANDING.

On July 18, 2005, Shafiiq, through his Next Friend, Kiyemba, filed a Petition for writ of *habeas corpus* in this Court. In his Authorization & Notification, attached to the Petition, Kiyemba states, *inter alia*:

> I, Jamal Kiyemba, understand the legal term "Next Friend" and firmly believe that the following people (as attached) [Shafiiq], who I have come to know during my captivity since March 2002, want me to act as their "Next Friend" and authorize Clive Stafford Smith to seek any legal redress on their behalf that is possible, and I so authorize him to also submit this document as evidence, independent of their reliance upon me as "Next Friend," of their specific desire for a lawyer and for a legal challenge to the illegality of their detention by the United States of America.

2

*Kiyemba Authorization and Notification* (attached hereto as Exhibit 1). *See also* Declaration of Clive A. Stafford Smith ("Smith Declaration"), *generally*, and *specifically* ¶¶ 6-88; 15-19; 28,29; 90- 96; and 128-140 (detailing counsel's *bona fides* and experience with Guantanamo procedures and obstacles relative to detainee communication and representation) (attached hereto as Exhibit 2).

On August 31, 2005, Respondents moved for an order to show cause why the Petition should not be dismissed. In support of their motion, Respondents' attached the Declaration of Frank Sweigert in which Mr. Sweigert states that detainees in various categories have been informed that they could file a writ of *habeas corpus* in federal court if they want to challenge the lawfulness of their detention. *See* Declaration of Frank Sweigart, attached to Respondents' Motion to Order Petitioners to Show Cause as Exhibit B at ¶¶ 3-5 and accompanying exhibits.

The notifications state, *inter alia*:

> *You may ask a friend or family member or a lawyer to file such a petition with the Court. If you do not have a lawyer or a family member or a friend who could file this petition for you, you may file your own petition.*

*Id.* (emphasis added).

Shafiiq did exactly as the notifications provide: He asked a friend to obtain counsel and file this Petition on his behalf. The facts stated in Kiyemba's Authorization & Notification therefore constitute *prima facie* evidence of standing in accordance with the notifications given by the Respondents. These facts are sufficient to allow counsel to consult with Shafiiq and his Next Friend, Kiyemba.

**II.  THE RESPONDENTS' CONDUCT AND THE CIRCUMSTANCES OF SHAFIIQ'S DETENTION SEVERELY IMPEDE HIS ACCESS TO HIS FAMILY, HIS ATTORNEYS AND THIS COURT AND CREATE THE NEED FOR NEXT FRIEND PETITONS.**

Shafiiq has been detained and imprisoned by Respondents at the U.S. Naval Base at Guantanamo, Cuba, for an undetermined time, possibly as long as 3½ years.  The need for Kiyemba to act as Shafiiq's "Next Friend" is due to Respondents' *own* policies at Guantanamo.  For example, Shafiiq has been held virtually incommunicado at Guantanamo, in isolation from external friends and family. *See* Smith Declaration ¶ 46.  Respondents have refused to divulge the names of the Guantanamo detainees, their countries of origin, or the names of their relatives. *Id.* at ¶ 14.  As a matter of policy at Guantanamo, many detainees do not have access to pen and paper. *Id.* at ¶ 95.  Those that have access to writing implements face an intentionally inconsistent and unreliable mail system, which is characterized by the non-delivery of mail or delivery delays of up to five months. *Id.* at ¶ 80.

Like other detainees, Shafiiq has had no contact with the news media or anyone else from outside the closed Guantanamo prison system during the length of his imprisonment. *See id.* at ¶ 46.  He does not speak English. (He speaks Arabic according to his Next Friend, Kiyemba).  Respondents have limited his attorney's ability to know his last name or ISN number. *See id.* at ¶¶ 28-30.  Shafiiq has had no criminal charges brought against him.  He has every reason to rely on his friendships with other prisoners who speak his language and suffer under the same disabilities.

4

Because of Respondent's policies at Guantanamo, detainees' family members are unknown to outsiders, and in almost all cases unreachable by prisoners themselves, making it necessary for him to rely on fellow inmates for access to courts. *See* Declaration of Barbara Olshansky dated September 9, 2005 at ¶ 5 ("Olshansky Declaration") (attached hereto as <u>Exhibit 3</u>). No party outside Guantanamo is allowed to know the specific camp or building in which Petitioner is being imprisoned, nor the "grade" or "level" of penal detention he occupies, each level being determinative of the privileges he receives. Shafiiq has no expectation of release, ever, and he has every reason to challenge his confinement. Respondents themselves impose the very disabilities that prevent Shafiiq from contacting external friends and family or an attorney.

According to the Department of Defense, the only counsel currently provided access to the detainees are counsel who are employed or retained by or on behalf of a detainee for purposes of representing the detainee in *habeas corpus* or other litigation in federal court in the United States…." *See* Olshansky Declaration at Exhibit E (Letter to Mr. Shayana Kadidal, dated Nov. 2, 2004). Therefore, under Respondents' own procedures, counsel must first file a *habeas corpus* petition on behalf of a detainee in order to meet with the detainee, and the only petition that counsel can file before such a meeting is a next friend petition. *See* 28 U.S.C. § 2242.

Ironically, Respondents now attack the very process they themselves established. The written notifications Respondents cite in support of their Motion specifically state "you may ask a ***friend***…to file such a petition with the Court." *See* Declaration of

5

Frank Sweigart at ¶¶ 3-5 and attached exhibits.(emphasis added).  In other words, the first option is the next friend option.  If that option is not open, *then* the notifications allow for *pro se* petitions: "If you do not have a lawyer or a family member or a friend who could file this petition for you, you may file your own petition." *Id.*

Respondents are not only bound by the very procedures they offered to Guantanamo prisoners, but, until quite recently, they explicitly admitted the propriety of fellow detainees acting as legitimate "next friends" without regard to the fulfillment of the *Whitmore* guidelines.  *See* Respondents' Motion to Dismiss in *John does 1-570 v. Bush*, 05-CV-0313 (CKK) (D.D.C.) at pp 15-16.  In that Motion, Respondents disputed an attempt by attorneys to pursue a petition for a writ of *habeas corpus* on behalf of 570 nameless inmates at Guantanamo and moved for dismissal, citing *Whitmore* for the principle that the attorneys had not been authorized by the nameless inmates and lacked a significant relationship with them.  To attack this *John Doe* attempt at representation, Respondents argued that the "vast majority of these detainees have filed petitions through other individuals acting as *legitimate next friends* – family members, an attorney who already represented the detainee in pending military commission proceedings, ***and fellow detainees***."(emphasis added).  In the present case, however, Respondents take a contradictory position and now seek to challenge that which they previously argued was proper method for a detainee to obtain access to the court.

Incredibly, Respondents, who have interrogated the detainees and hold all of the information about them, now argue that "the phenomenon of detainees filing petitions purportedly on behalf of other detainees about whom they have little knowledge

6

presents the practical difficulty of identifying the detainees for whom *habeas* relief is sought." Respondents' Motion to Order Petitioners to Show Cause at 14. This argument is without merit. Indeed, as Judge Roberson has already perceived, the Government has a data base for all of the detainees.[1] Respondents' argument that it is "difficult to identify" the detainees is a transparent attempt to further obstruct Petitioners' access to the courts. The Respondents' refusal to provide any information about the detainees is wholly unreasonable and another reason why they should be held to their previous position that detainees may have a friend, including a fellow detainee, file a petition on their behalf.

### III.    SHAFIIQ'S PETITION SATISFIES THE *WHITMORE* STANDARDS.

In *Whitmore v. Arkansas* the Supreme Court established two requirements for next-friend standing: first, a next friend must provide an adequate explanation -- such as inaccessibility, mental incompetence, or other disability -- for why the real party in interest cannot appear on his own behalf to prosecute the action. 495 U.S. 149, 161-64 (1990). Second, the next friend must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate. *See id*. at 163. Shafiiq's Petition satisfies these standards.

---

[1] At the August 1, 2005, status conference involving Uighur detainees who had been cleared as NLECs, the Court held this colloquy with the Respondents' counsel, Terry Henry: THE COURT: Oh, I think you've got a database. How many people are down there? MR.HENRY: A little over 500. Your Honor, I'm telling you, as- THE COURT: It's easy, isn't it? MR.HENRY: I don't know, Your Honor. It involves our inquiry to the client and that sort of thing. Transcript at 21-22, August 1, 2005 Status Conf., *Qassim v. Bush*, CV 05-497(JR).

7

As to *Whitmore's* first requirement, the Ninth Circuit has specifically recognized that detainees held at the Guantanamo Bay facility, such as Shafiiq, can be categorized as *inaccessible*:

> [I]t is evident that the detainees are being held in a secure facility in an isolated area of the world, on a United States Naval Base in a foreign country, to which United States citizens are severely restricted from traveling…. As stated by the district court, and conceded by the Government at argument, "from a practical point of view the detainees cannot be said to have unimpeded or free access to court."

*Coalition of Clergy v. Bush*, 310 F.3d 1153, 1161 (9th Cir. 2002) (quoting *Coalition of Clergy v. Bush,* 189 F. Supp. 2d 1036, 1042 (C.D. Cal. 2002)).

As to *Whitmore's* second requirement, whether the next friend is truly dedicated to the best interests of the person on whose behalf he seeks to litigate, the interests of Kiyemba and Nabil could not be more strongly aligned.  The similarity of treatment received by Kiyemba, the common faith, language and uncertain legal status only enforce the reliability of Kiyemba's status as a next friend.  Not unexpectedly, the extreme nature of their detention reportedly has produced a certain fraternity of concern and dedication, one Muslim detainee to another. *See Authorization & Notification*. Shafiiq wanted Kiyemba's assistance. *See id.*   By signing the Authorization & Notification in the face of his own detention, Kiyemba has made it quite clear in the most concrete way possible that he desires to help Shafiiq and, in so doing, is willing to take the risk of prolonging his own detention or of making it more difficult.

In light of the extreme isolation of the Guantanamo detainees from family, friends, counsel and the world, a fellow detainee is almost certainly the only practicable

8

next friend.  According to Clive Stafford Smith, who represents Kiyemba and a number of Guantanamo detainees and who has traveled extensively in the Middle East seeking family members of the detainees, to request that a family member be a "next friend" might put the said family member in danger. *See* Smith Declaration, ¶ 74.  For most, if not all detainees, family members or friends outside Guantanamo are entirely out of reach.  Under these circumstances, the willingness of one detainee to act on behalf of a friend is powerful evidence of a significant relationship to satisfy the second prong of *Whitmore*, a relationship only enhanced by the historically unprecedented conditions of detention.[2]

### IV. THE RESPONDENTS' CONDUCT AND THE CIRCUMSTANCES OF SHAFIIQ'S DETENTION PROVIDE CAUSE FOR THE COURT TO EXCUSE ANY ALLEGED DEFECTS IN HIS ALLEGATIONS OF STANDING AND TO ORDER RESPONDENTS TO COOPERATE IN AFFORDING COUNSEL AN OPPORTUNITY TO CONSULT WITH SHAFIIQ AND HIS NEXT FRIEND, KIYEMBA.

Petitioners have demonstrated standing under *Whitmore*.  But if there are lingering concerns, these should be excused because they were caused by the Respondents.

The Great Writ excuses procedural irregularities because it "is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose – the protection of individuals against erosion of their right to be free from

---

[2] In all events, the existence of a "significant relationship" should be just one factor for consideration in assessing a would be next friend. *See Coalition of Clergy v. Bush*, 310 F.3d at 1166 (Berzon, J., concurring); Belk, *Next Friend Standing and the War On Terror*, 53 DUKE L.J. 1747, 1775-1778 (2004).

9

wrongful restraints upon their liberty." *Peyton v. Rowe*, 391 U.S. 54, 66 (1968) (citations omitted). In *Harris v. Nelson*, the Supreme Court instructed:

> The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action. Its pre-eminent role is recognized by the admonition in the Constitution that: "The Privilege of the Writ of Habeas Corpus shall not be suspended…." …The scope and flexibility of the writ – its capacity to reach all manner of illegal detention – *its ability to cut through barriers of form and procedural mazes* – have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.

394 U.S. 286, 290-91 (1969)(emphasis added).

As this Court is well aware, prisoners seeking *habeas* relief ordinarily fall into two categories, (1) federal prisoners, under 28 U.S.C. § 2255, and (2) state prisoners, under 28 U.S.C. § 2254. Unlike the Guantanamo detainees, traditional prisoners are afforded a wide variety of rights and protections: they are informed of the crime they are charged with; they are represented by counsel; they are tried by a jury of their peers; they have an appeal; and they have procedural remedies to challenge their incarceration. Yet, after all of these procedural protections, the Great Writ is still available to traditional prisoners in appropriate circumstances.[3]

---

[3] An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the *applicant has exhausted the remedies available in the courts of the State; or there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant*.

28 U.S.C. § 2254(b)(1)(emphasis added).

Even more remarkable, in *habeas* cases arising under 28 U.S.C. §§ 2254 and 2255 the federal courts can excuse procedural defects that would otherwise defeat jurisdiction if cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *United States v. McKie* 73 F.3d 1149, 1154, (D.C. Cir. 1996). Under the cause and prejudice test, a petitioner demonstrates cause by showing "that some objective factor external to the defense impeded efforts to comply with the State's procedural rule." *High v. Ignacio*, 408 F.3d 585, 590 (9th Cir. 2005) (quoting *Pizzuto v. Arave*, 280 F.3d 949, 975 (9th Cir. 2002)). "Thus, cause is an external impediment *such as government interference* or reasonable unavailability of a claim's factual basis." *Id*. (emphasis added); *see also Lattimore v. DuBois*, 152 F.Supp. 2d 67, 81 (D. Mass. 2001) (trial court's failure to appoint counsel, conduct hearing and require pleadings constituted objective factor impeding procedural compliance), *rev'd on other grounds*, 311 F.3d. 46 (1st Cir. 2002); *Bliss v. Lockhart*, 891 F.2d 1335, 1342 (8th Cir. 1989) (finding cause, prejudice and potential miscarriage of justice excused procedural default).

If this Court can excuse procedural defects that would otherwise deprive it of jurisdiction in traditional *habeas* cases where the prisoners have been afforded many

---

> A prisoner in custody *under sentence of a court* established by Act of Congress claiming the right to be released upon the ground that *the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack*, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. (emphasis added).

procedural protections, then surely this Court has a similar power here where prisoners have been afforded no such protections.

There is no doubt that cause exists here to excuse any technical defects or information gaps in Shafiiq's Petition. If such gaps exist, they are a direct result of the external circumstances created by the Respondents, who control all of the circumstances of Shafiiq's incarceration and all of the information available concerning Shafiiq.

But in fact, it is not necessary that procedural defects be excused. Rather, to the extent there are any lingering question about standing, these questions can be removed if this Court simply requires the consultative process to proceed. The opportunity for Shafiiq to consult directly with counsel would assure that he understands the rights available to him and would allow counsel to obtain Shafiiq's written instructions. In this way, the Court can be assured that Shafiiq has made an informed decision, rather than having to infer that Shafiiq does not want counsel and wishes to stay in detention indefinitely, as the Respondents would have the Court assume.

Respondents themselves confirm the reasonableness of allowing the consultative process to proceed:

> Even if the Court finds that petitioners have established next friend standing so that the Court can exercise jurisdiction over the petitions, the next friends should not be permitted to serve in this capacity beyond the time when counsel are permitted to meet with the detainees for whom habeas relief is sought. (*citations omitted*)…(permitting counsel two visits with a detainee before an authorization of representation by the detainee must be provided to respondents.) *At that time, counsel should determine these detainees' wishes concerning pursuing a challenge to their detention through the habeas petitions in these cases, such that the*

> *cases can then either be converted into direct petitions or be dismissed.*

Respondents' Motion to Order Petitioners to Show Cause at footnote 12 (emphasis added).

## **CONCLUSION**

For the foregoing reasons Shafiiq has established standing for the Court to examine and rule on Shafiiq's Petition for a writ of *habeas corpus*. If there are any lingering concerns about standing, then the Court should order that Respondents cooperate in affording counsel an opportunity to consult directly with Shafiiq and his next friend, Kiyemba.

DATED: November 18, 2005

    Respectfully submitted,

    Counsel for Petitioner Shafiiq:

      /s Mona Burton
    _____
    Scott S. Barker (Colorado State Bar #11177)
    J. Triplett Mackintosh (Colorado State Bar #22359)
    Hamid M. Khan  (Colorado State Bar #34139)
    HOLLAND & HART LLP
    555 17th Street, Suite 3200
    Denver, Co 80202
    (303) 295-8000

    Mona Burton (Utah State Bar #5399)
    Robert G. Wing (Utah State Bar #4445)
    James R. Farmer (Utah State Bar #8592)
    Amy Poulson (Utah State Bar #9378)
    HOLLAND & HART LLP
    60 East South Temple, Suite 2000
    Salt Lake City, UT  84111
    Telephone:  (801) 595-7800

    Of Counsel
    Barbara J. Olshansky (New York State Bar #3635)
    CENTER FOR CONSTITUTIONAL RIGHTS
    666 Broadway
    New York, New York 10012
    Telephone: (212) 614-6439

## CERTIFICATE OF SERVICE

I certify that on November 18, 2005, I served a copy of the foregoing document to the following by electronic filing and also by U.S. Mail.

c/o Preeya Noronha
Peter D. Keisler
Joseph H. Hunt
Kenneth L. Wainstein
Douglas N. Letter
Vincent M. Garvey
Terry M. Henry
James J. Schwartz
Robert J. Katerberg
Nicholas J. Patterson
Andrew I. Warden
Edward H. White
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W. Room 7144
Washington, DC  20530
preeya.noronha@usdoj.gov

/s J. Triplett Mackintosh

3479747_1.DOC