IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUFYIAN BARHOUMI<br>a/k/a SHAFFIQ, *et al.*,<br><br>       Petitioners/Plaintiffs,<br><br>v.<br><br>GEORGE W. BUSH, *et al.*,<br><br>       Respondents/Defendants. | Civil No.  05-CV-1506 (RMC) (AK) |

**PETITIONER'S OPPOSITION TO MOTION TO DISMISS,
NOTIFICATION OF INTENT TO FILE DTA PETITION, AND
MOTION FOR A STAY-AND-ABEY ORDER**

Petitioner Barhoumi, through his attorneys, opposes Respondents' Motion to Dismiss this action.  Petitioner Barhoumi respectfully requests that the Court enter an Order staying this case while litigation concerning the Detainee Treatment Act of 2005 proceeds in the appellate courts, and holding a disposition of the merits in abeyance pending the outcome of that litigation. Counsel for Petitioner has conferred with Counsel for Respondents regarding Petitioner's request for a Stay-and-Abey Order, and Respondents oppose the motion.

## I. INTRODUCTION

At the time Petitioner filed his petition for habeas corpus, this Court had jurisdiction to review the grounds for detention, as the Supreme Court held in *Rasul v. Bush*, 542 U.S. 466 (2004).  Since that time, the government has claimed that intervening statutes deprived the District Courts of jurisdiction, a position that Petitioner and similarly-situated petitioning Guantanamo detainees contest based on an array of factual and legal arguments.

Due to suggestions by the Supreme Court in the recent denial of certiorari in *Boumediene v. Bush*, Petitioner intends to file a Petition authorized by the Detainee Treatment Act of 2005,

Pub. L. No. 109-148, 119 Stat. 2680 ("DTA"), with the United States Court of Appeals for the District of Columbia Circuit. Petitioner intends to file his DTA Petition in the Court of Appeals to exhaust remedies available under the DTA, while still maintaining his contention that the DTA does not provide an adequate substitute for habeas corpus proceedings. *See generally Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir.), *cert. denied*, 127 S. Ct. 1478 (2007); *Boumediene v. Bush*, 127 S. Ct. 1478, 1479 (2007) (Stevens & Kennedy, JJ., statement regarding denial of certiorari and suggesting exhaustion of DTA remedies as a prerequisite for further potential Supreme Court review).

In the interests of justice, Petitioner requests that this Court deny the Motion to Dismiss and, instead, enter an order staying this case while litigation concerning the DTA – including the adequacy of remedies and related jurisdictional questions – proceeds in the appellate courts, and holding a disposition of the merits in abeyance pending the outcome of that litigation. *See Rhines v. Weber*, 544 U.S. 269, 274 (2005).

## II. ARGUMENT

### A. This Court Retains Subject-Matter Jurisdiction over the Habeas Corpus Petition as Long as the Petitioner's Claims Are Not Frivolous and Have Not Been Decided on the Merits by the Supreme Court.

The government places primary reliance on *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998), for the unremarkable proposition that jurisdiction is a threshold question (Motion at 4). The government ignores the preceding language in *Steel Co.*, language that supports this Court's jurisdiction to maintain the habeas action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court. *Steel Co.*, 523 U.S. at 89.

The starting point of *Steel Co.* is that a District Court has subject matter jurisdiction as long as there is a non-frivolous argument that the laws and Constitution support the claim:

> [T]he district court has jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." . . . unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."

523 U.S. at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)).  As demonstrated by the dissenting opinions in the Court of Appeals and on the denial of certiorari in *Boumediene*, there is substantial support for a reading of the Constitution and laws of the United States that would sustain the instant habeas corpus petition.  476 F.3d at 994-1012 (Rogers, J., dissenting); 127 S. Ct. at 1479-81 (Breyer, Souter & Ginsburg, JJ., dissenting from denial of certiorari).

The *Steel Co.* opinion also establishes that a Court of Appeals opinion, such as *Boumediene*, is not sufficient to deprive the Court of subject-matter jurisdiction.  Only when the Supreme Court rules adversely on the merits is dismissal for want of subject matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy."  *Steel Co.*, 523 U.S. at 89 (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)) (emphasis added).  The *Boumediene* denial of certiorari is emphatically not a ruling on the merits.  *See Boumediene*, 127 S. Ct. at 1479 (Stevens & Kennedy, JJ., statement regarding denial of certiorari).

The jurisdictional issues are obviously not frivolous because the courts have been split on the legal and constitutional issues at each level of the litigation: the District Courts split, leading to the two-to-one *Boumediene* opinion, resulting in the three-way fracture in the *Boumediene*

3

denial of certiorari. Seldom has this country faced weightier issues about the meaning of our Constitution and the fundamental right to the writ of habeas corpus. The primary case upon which the government relies establishes that the Motion to Dismiss should be denied while remedies are exhausted.

This Court retains the power to decide its own jurisdiction in the first instance. *Kircher v. Putnam Funds Trust*, 126 S. Ct. 2145, 2155; *United States v. Ruiz*, 536 U.S. 622, 628 (2002). While the efficacy of the DTA remedies are determined, it is premature for this Court to determine the dispositive questions. Meanwhile, this Court should follow the stay-and-abey norm established in *Rhines*; then, if the case is not mooted by the DTA proceedings, it should provide Petitioner Barhoumi the opportunity to make his record, to present his claims, and to receive a decision based on the facts and law of his individual case.

The government's position is based on a fundamental misunderstanding of what it means for a court to have jurisdiction. "Jurisdiction is a word of many, too many, meanings." *Steel Co.*, 523 U.S. at 90 (quoting *United States v. Vanness*, 85 F.3d 661, 663 n. 2 (D.C. Cir. 1996)). While the *Boumediene* opinion states the current law of the Circuit, the ruling does nothing to impair Petitioner's rights to exhaust his remedies while this Court preserves the status quo.[1] If necessary, after exhaustion, this Court, the Circuit Court, and the Supreme Court have

---

[1] The government erroneously cites to *Ayuda v. Thornburg*, 919 F.2d 153 (D.C. Cir. 1990), for the proposition that a Court of Appeals opinion immediately becomes the law of the circuit, depriving the courts of the power to stay and hold in abeyance. In fact, the majority ruled in *Ayuda* that a stay was appropriate. The government cited a concurring opinion only, and, in that opinion, the concurring Judge ultimately agreed with the majority, which rejected the proposition that the court lacked power to enter a stay. *See Ayuda*, 919 F.2d at 153. The other concurring and dissenting opinion correctly articulated the applicable law that, until the Supreme Court speaks on jurisdiction, the District Court has the power to determine its own jurisdiction including "minimally, the power to maintain the status quo." *Ayuda*, 919 F.3d at 155-56 (Wald, C.J., concurring and dissenting).

jurisdiction to determine the substantial issues raised by Petitioner without prejudgment based on a Circuit Court ruling that does not address Petitioner's specific factual and legal claims.

**B. The *Boumediene* Case Establishes That the Present Case Involves Substantial Issues That Have Not Been Decided by the Supreme Court and That the Exhaustion of Available Remedies Should Precede a Decision on the Merits.**

The government attempts to stretch the Circuit Court's *Boumediene* decision far beyond its reach. Despite the initial jurisdiction found in *Rasul*, a split panel of this Court found that post-*Rasul* statutes deprived the courts of jurisdiction over petitions involving aliens detained at Guantánamo. *Boumediene*, 476 F.3d 981. Only because the petitioners in those cases had declined to seek review directly with the Court of Appeals under § 1005(e) of the Detainee Treatment Act of 2005, the Court found that the "only recourse" was to vacate the District Court decision and dismiss the case for lack of jurisdiction. *Id.* at 994. The petitioners filed for a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a two-Justice statement respecting the denial of certiorari. *Boumediene,* 127 S. Ct. at 1478.

The statement of Justices Stevens and Kennedy found that, given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "at this time." *Id*. at 1479. The Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" *Id.* (quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of certiorari)).

The government's reliance on *Boumediene* is misplaced for several reasons. First, the Circuit Court's reference to the *Boumediene* petitioners' decision not to exhaust, coupled with Justices Stevens and Kennedy's explicit adoption of the exhaustion model based on *Ex parte Hawk*, 321 U.S. 114 (1944), support continuing the stay while the DTA remedy is exhausted. Second, the jurisdictional questions have not been finally resolved because "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene*, 127 S. Ct. at 1479 (Stevens & Kennedy, JJ., statement regarding denial of certiorari) (citing *Rasul*, 542 U.S. at 480-81). Third, Justices Stevens and Kennedy's citation to Supreme Court authority regarding the efficacy of the alternative remedies contemplates an underlying habeas corpus case in which Petitioner Barhoumi can present such arguments to the District Court and, if necessary, the Circuit Court and Supreme Court.

*1. Justices Stevens and Kennedy Explicitly (and the Circuit Court Implicitly) Adopted the Exhaustion of Remedies Model for Habeas Relief*

*Boumediene* does not control this case because, unlike the petitioners in that case, Petitioner here intends to exhaust his remedies under the DTA. The Circuit Court opinion expressly predicated its dismissal order on the petitioners' failure to utilize available remedies under the DTA. *Boumediene*, 476 F.3d at 994. Justices Stevens and Kennedy explained that "[d]espite the obvious importance of the issues," the Court was denying certiorari "at this time" in light of the Court's practice of requiring exhaustion of available remedies, citing *Ex parte Hawk*. *Boumediene*, 127 S. Ct. at 1479.

The citation to *Hawk* is telling. In that case, the petitioner filed for federal habeas corpus relief under circumstances, as in the present case, in which the effectiveness of other remedies had not been established. The Supreme Court not only applied the exhaustion rule but held that

6

the adequacy of the available remedy should be decided in the first instance by "the federal district court":

> Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated . . . .  But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy . . . or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate . . . , a federal court should entertain his petition for habeas corpus, else he would be remediless.  In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus.

321 U.S. at 118 (citations omitted).  The exhaustion model anticipates that the ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the DTA remedy, will first be considered and decided in the District Court. The ultimate issues would then be preserved for appellate and Supreme Court review, if necessary.

> *2. The Supreme Court Has Not Decided Any Questions Regarding the Jurisdiction of This Court or the Rights That Can Be Enforced Through Habeas Corpus Proceedings*

The government's claims regarding *Boumediene* ignore the simple reality that "as always, denial of certiorari does not constitute an expression of any opinion on the merits." 127 S. Ct. at 1479.  Three dissenting Justices and Circuit Judge Rogers in dissent explained that the constitutional ramifications of a statute that purports to disenfranchise petitioners in existing habeas corpus petitions are profound and of obvious importance.  *Boumediene*, 476 F.3d at 994-1012; 127 S. Ct. at 1479-81.  The addition of Justices Stevens and Kennedy's statement confirms that the instant petition should be fully considered after exhaustion, and then in light of the specific claims for relief Petitioner makes upon his unique facts in the DTA proceedings, and

whether those proceedings prove capable of providing the relief he claims on his facts. The *Boumediene* case does not finally resolve the jurisdictional questions in this case.[2]

    *3. The Jurisdictional Questions Regarding Habeas Corpus Cannot Be Resolved until the Adequacy of the DTA Remedy Becomes Known*

Questions regarding the suspension and elimination of the writ of habeas corpus require consideration of whether alternative remedies provide protection coextensive with the Great Writ. *Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus."). The *Boumediene* statement on certiorari clearly sets out, with citation to *Marino v. Ragen*, 332 U.S. 561 (1947), that, if the DTA remedy is "inadequate," the Court is prepared to address the merits of the habeas corpus claims. *Boumediene*, 127 S. Ct. at 1479 (statement of Stevens and Kennedy, JJ.). Further, the Court stated that, in the interim, the government should take no additional steps "to prejudice the position of petitioners" in seeking review. *Id*. By maintaining the present case in the District Court, this Court is in a position to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." *Id*. In sum, the exhaustion model from the *Boumediene* litigation requires that this District Court proceeding remain in place for potential post-exhaustion litigation.

---

[2] The *Boumediene* case does not even finally decide the questions for the *Boumediene* petitioners, given that the mandate has not issued and the cases are still subject to motions and briefing.

### C. Because Petitioner Is Exhausting Available Remedies, The District Court Not Only Has Discretion to Enter a Stay-and-Abey Order, But Such An Order Is Mandatory Under *Rhines*

Given the need to exhaust remedies under the DTA, the District Court proceedings should continue to be stayed and held in abeyance pending completion of Petitioner's DTA review. In *Rhines*, the Supreme Court explicitly approved the stay-and-abey procedure in the closely analogous context of federal habeas corpus proceedings. 544 U.S. at 278. In *Rhines*, the prisoner filed a mixed habeas petition in federal court, which contained both claims exhausted through the state court system and unexhausted claims. Given the major procedural risks entailed by a dismissal order, the Court found that District Courts have discretion to enter stay-and-abey orders in the federal habeas case while the unexhausted claims are presented to the state court. The federal habeas corpus case is stayed and held in abeyance for a reasonable time while available state remedies are exhausted.

The *Rhines* court found three preconditions for, in effect, mandatory stay-and-abey. "[I]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss" if the petitioner demonstrated (1) good cause for the failure to exhaust, (2) potentially meritorious unexhausted claims, and (3) no intentionally dilatory tactics by the petitioner. *Rhines*, 544 at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005).[3] The petition here easily meets all three conditions for entry of a mandatory stay-and-abey order.

First, despite the government's assertion that DTA Petition's could have been pursued "at any time," (Motion at 7), Petitioner had good cause for not exhausting the potential DTA remedy before now. The DTA was not enacted until many months after the filing of Petitioner's petition

---

[3] In *Rhines*, three Justices concurred, stating that stay-and-abey is required *in the absence of proof of* "intentionally dilatory litigation tactics." 544 U.S. at 279 (Souter, J., concurring, joined by Justices Ginsburg and Breyer).

for a writ of habeas corpus in this Court. Since then, the Supreme Court, the Congress, and the Court of Appeals all have made decisions on the scope and nature of review available to the detainees, and there remains a genuine prospect of further Supreme Court review of the *Boumediene* jurisdictional holding. Following the Court of Appeals' opinion in that case, the most prudent option available to Petitioner was to await the Supreme Court's ruling on the *Boumediene* certiorari petition before filing any DTA petition. In light of the explanatory statement of Justices Stevens and Kennedy, it is now evident that exhaustion of DTA remedies will be a key consideration to any further review by the Supreme Court.

Further, the potential remedy under the DTA did not on its face appear to provide the relief available under common-law or statutory habeas. In *Pace*, the Court noted that potential confusion regarding state remedies required equitable protections. 544 U.S. at 416. Guantánamo detainees face complexities that are similar and worse. The questions left open by the Supreme Court's decision in *Rasul*, and the subsequent DTA and Military Commission Act of 2006, have resulted in major complications.

As to the potential merits, two Justices of the Supreme Court would have granted expedited review of the matters raised in the *Boumediene* certiorari petition, three would have granted certiorari, and two required exhaustion of DTA claims. Therefore, at least five Justices have suggested the matters raised in the *Boumediene* petition have merit. The procedural history of the case demonstrates that judges on each court to address the issues have recognized the importance of the issues raised – the district courts split, leading to the two-to-one *Boumediene* opinion, resulting in the three-way fracture in the *Boumediene* denial of certiorari. Seldom has this country faced weightier issues about the meaning of our Constitution and the fundamental right to the writ of habeas corpus. The DTA review in the Court of Appeals may involve the

10

first-ever merits review of Petitioner's case by any court, despite his detention for years – likely five or six – without <u>any</u> charges having been filed. Petitioner has a number of factual and legal claims that he anticipates raising in the Court of Appeals, including, but not limited to the following: At his CSRT proceeding, Petitioner Barhoumi denied all of the allegations against him, including the specific allegation that he was a member of Al Qaeda. He specifically requested the opportunity to review the classified information allegedly against him and explained that he could not defend himself without full access to the evidence being considered. Petitioner Barhoumi also explained that his leg had been injured by guards at Guantanamo forcing him to walk with chains on. Mr. Barhoumi also anticipates challenging the CSRT process and the standard of "enemy combatant" applied by the CSRT, as well as the sufficiency of the evidence that purportedly met that standard. He also anticipates challenging the CSRT process as a substitute for *habeas corpus*. He anticipates that such legal issues may become the subject of further review by the Supreme Court. DTA review under these circumstances – although Petitioner believes it is not an adequate substitute for habeas corpus review – provides at least some potential for relief in the interim, and therefore is not "plainly meritless."

Third, the delay in these proceedings cannot fairly be attributed to Petitioner. The Guantánamo habeas actions have been tied up in appellate litigation almost continuously since their filing, during which time the courts, the Congress, and the Executive Branch have struggled to fashion a suitable legal framework. Despite the unresolved legal situation, since filing this habeas corpus petition, Petitioner's counsel have sought a fair and efficient review of Petitioner's case, by a court of law. In light of the statement in *Boumediene* by Justices Stevens and Kennedy, Petitioner has every intention to exhaust the available DTA remedies expeditiously, to allow for further Supreme Court review.

11

Finally, the government's attempt to distinguish *Rhines* fails because the government attempts to interpret *Rhines* to mean less than it actually says. The government contends that the power of the district court to stay-and-abey under *Rhines* is limited only to those instances when failing to stay-and-abey would cause a statute of limitations to run that would preclude the petitioner from refiling. (Motion at 6-7). This was the factual predicate in *Rhines*, not its holding. Nothing in *Rhines* limited the District Court's equitable power to stay-and-abey only to concerns regarding statutes of limitation. Rather, *Rhines* held that the equitable powers the District Court possessed before enactment of the statute of limitations continued to exist and were not extinguished by the statute. *Rhines*, 544 U.S. at 276. As in *Pace*, the concern warranting the stay-and-abey approach was to protect the petitioner from impairment of his ability to exercise his habeas corpus rights in the future. *Cf. Omar v. Harvey*, 479 F.3d 1 (D.C. Cir. 2007) (affirming the District Court's preliminary injunction barring transfer of a prisoner entered to preserve the court's jurisdiction over the habeas corpus petition of an American citizen detained in a military facility in Iraq).

The exhaustion required by *Hawk* operates as does the exhaustion required by the statute in *Rhines*. Further, the same type of procedural obstacles that dismissal would create under 28 U.S.C. § 2254 confront detainees in Guantánamo cut off from contact with their lawyers and facing retroactivity questions regarding statutes that purport to impair the jurisdiction that unquestionably existed at the time the habeas corpus petition was filed. *Rhines* is controlling authority regarding stay-and-abey procedures while remedies are being exhausted.

The claims raised by Petitioner are substantial and meritorious, and Petitioner has not engaged in dilatory tactics. In the event the case is remanded, or if the procedures for review set forth in § 1005(e) of the DTA prove an inadequate substitute for constitutionally-required habeas

corpus procedures, this Court should be in position to proceed immediately on the habeas petition.

### III.   CONCLUSION

Petitioner's habeas corpus rights are far from finally decided: the Supreme Court has yet to speak on the merits, and Petitioner has not had his individual facts and legal arguments heard. Under governing Supreme Court precedent, the status quo should be preserved while the cases are litigated: under *Rhines*, the mechanism for permitting exhaustion of remedies without prejudice to habeas corpus rights is to stay the District Court action and hold it in abeyance for a reasonable time to allow the DTA direct actions to be litigated.

Dated:  May 3, 2007

Respectfully submitted,

/s Danielle R. Voorhees
Anne J. Castle
Scott S. Barker
J. Triplett Mackintosh
William Murane
Danielle R. Voorhees
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Telephone:  (303) 295-8000

Of Counsel
Shayana Kadidal
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway 7th Floor
New York NY  10012
phone: (212) 614-6438
fax: (212) 614-6499

## CERTIFICATE OF SERVICE

I hereby certify that on 5/3/2007, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the following:

    United States Department of Justice
    Civil Division, Federal Programs Branch
    20 Massachusetts Ave., N.W., Room 7144
    Washington, DC  20530

    /s Danielle R. Voorhees
    Holland & Hart LLP

3704740_1.DOC